UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CURTIS LEWIS JONES,

       Plaintiff,

v.                                                                Case No. 2:15-cv-156
                                                                HON.  GORDON J. QUIST

KATHY OLSON, et al.,

       Defendants.
_____/

## REPORT AND RECOMMENDATION

       This is a civil rights action brought by state prisoner Curtis Lewis Jones pursuant to 42 U.S.C. § 1983.  Defendants filed a motion for summary judgment (ECF No. 14) on the ground that Plaintiff failed to exhaust his available administrative remedies.  Plaintiff filed a response (ECF No. 16).   Plaintiff filed this complaint against Defendants Kathy Olson, Don Mansfield, Todd Menard, and Marc Pillion.

       On February 2, 2015, Plaintiff was placed in a glass isolation cell after he was issued a Class II misconduct ticket.  Plaintiff states that these cells are normally used for mentally ill prisoners that need observation.  Plaintiff was provided only a thin tear resistant blanket.  His clothing was taken and all fixtures in the cell were removed.  After two weeks in the cell, Plaintiff complained that the cell was "freezing" because the cell window and framing was broken causing the cold air to pour into the cell right above the bed.  Plaintiff asked segregation officers Franks and Defendant Pillion if he could move to a different cell.  The officers stated that the Inspector would not allow Plaintiff out of that cell.

Several days later, Plaintiff spoke with Defendants Mansfield and Menard about the draft coming through the broken window in the cell and Plaintiff showed Defendant Menard the trash bag that Defendant Pillion had taped to the window to attempt to stop cold air from entering the cell. Defendant Menard replied that it is a very old prison and that he was unable to move Plaintiff because of the Inspector. Several days later, Plaintiff approached Defendant Deputy Warden Olson explaining that he was without blankets and clothing. Plaintiff showed Defendant Olson the trash bag taped on the window. Plaintiff told Defendant Olson that the cold air was making him sick and that he was unable to sleep. Defendant Olson responded by saying that hopefully it would start getting warmer soon and that there was nothing that she could do to help Plaintiff.

Plaintiff became very sick and wrote healthcare on February 18, 2015. Plaintiff was called to healthcare on March 3, 2015, where he was told that he had a flu like illness and would have to wait it out. After returning to the cold cell, Plaintiff's sickness worsened. Plaintiff was unable to eat or sleep because of the cold, and he suffered with weight loss.

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005).

The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-216 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

3

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e (a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 549 U.S. 199, 218-19 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S.Ct. 1850, 1859-1860 (2016).

MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.*

4

at ¶¶ P, V.  The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely.  Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places and names of all those involved in the issue being grieved are to be included."  *Id.* at ¶ R (emphasis in original).[1]  The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent.  *Id.* at ¶ V.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due.  *Id.* at ¶¶ T, BB.  The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances.  *Id.* at ¶ DD.  If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form.  *Id.* at ¶¶ T, FF.  The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due.  *Id.* at ¶ T, FF.  The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director.  *Id.* at ¶ GG.  "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall

---

[1] In *Holoway v. McClaren*, No. 15-2184 (6th Cir., April 7, 2016) (unpublished), the Sixth Circuit concluded that where a plaintiff fails to name each defendant in his grievance, the un-named defendants may not be dismissed for failure to exhaust grievance remedies if the MDOC did not reject the grievance under the policy requiring a grievant to name each individual involved.  The Sixth Circuit stated: "Because MDOC officials addressed the merits of Holloway's grievance at each step and did not enforce any procedural requirements, Holloway's failure to identify the defendants named in this lawsuit and to specify any wrongdoing by them in his grievances cannot provide the basis for dismissal of his complaint for lack of exhaustion."  *Id*. at 3.  The Sixth Circuit failed to provide any guidance as to how the MDOC might determine who the plaintiff intended to name in a future federal lawsuit at the time the plaintiff filed his Step I grievance.

5

generally be completed within 120 calendar days unless an extension has been approved . . . ." *Id.* at ¶ S.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to PD 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ V of PD 03.02.130. *Id.* at ¶Q. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.* Regardless of whether the grievance is filed with grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with PD 01.01.140. The prisoner will be promptly notified that an extension of time is needed to investigate the grievance. *Id.*

The Defendants move for dismissal for failure to exhaust grievance remedies prior to Plaintiff filing his complaint. Defendants concede that the grievance process took too long to complete, but nevertheless argue that Plaintiff should have waited for the completion of his Step III grievance before filing this lawsuit. Alternatively, Defendants assert that since only Defendant Olsen was arguably named in the grievance, Defendants Mansfield, Menard, and Pillion should be dismissed. Plaintiff concedes that Defendant Pillion should be dismissed from this case because he never named Defendant Pillion in a grievance. Plaintiff argues that since he included Defendants Mansfield and Menard in the later steps of his grievance filings, and the MDOC never denied his grievance for failing to name Defendants Mansfield and Menard, but instead decided the grievance on the merits at each step, Defendants Mansfield and Menard cannot now argue that MDOC procedural requirement of naming each of them in a Step I grievance prevents Plaintiff from suing them in this case.

Plaintiff submitted grievance KCF-15-02-0205-22z on February 25, 2015. Plaintiff's complaint was filed well after the time period to complete the grievance process, but before the grievance was resolved at Step III. The MDOC exceeded the time period allowed by Policy Directive in responding to Plaintiff's grievance. Plaintiff filed his complaint on October 29, 2016, which is after the 120 day time period had expired for the MDOC to fully resolve the grievance. Plaintiff only had to wait until the allowable time for resolving a grievance had expired before filing a lawsuit.

Defendants concede that if Plaintiff's grievance KCF-15-02-0205-22z was completed when the 120 day time period expired, then Defendant Olson should not be dismissed from this action. Defendants Mansfield and Menard argue that they should be dismissed because Plaintiff never exhausted his claims against them by naming them in the Step I grievance. Defendant Menard was the Step I respondent and Defendant Mansfield was the Step I reviewer. ECF No. 15-2, PageID.102-103. Plaintiff named Defendants Mansfield and Defendant Menard in his Step II appeal stating that their Step I "findings are misleading and shows deliberate indifference." ECF No. 15-2, PageID.100. At Step III, Plaintiff complained that "Deputy Warden K. Olson; T. Menard and D. Mansfield failure to act was deliberate indifference giving way to cruel and unusual punishment." *Id*. The Step III appeal was denied and sent to Plaintiff on April 25, 2016.

In the opinion of the undersigned, it is close question whether Plaintiff exhausted his claims against Defendants Mansfield and Menard. The MDOC had the opportunity to reject Plaintiff's grievance at Step II or Step III against Defendant Mansfield and Defendant Menard for failing to name each of them in the Step I grievance. At this point, it is the opinion of the

7

undersigned that a question of fact exists regarding whether Plaintiff exhausted his claims against Defendants Mansfield and Menard.

For the foregoing reasons, I recommend that Defendants' motion for summary judgment (ECF No. 14) be granted, in part, dismissing Defendant Pillion without prejudice, and be denied, in part, as to Defendants Olson, Mansfield and Menard.

Dated:     September 27, 2016                   /s/ Timothy P. Greeley
                                                TIMOTHY P. GREELEY
                                                UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).